G. Gregg Webb (SBN: 298787)
gwebb@shb.com
SHOOK, HARDY & BACON L.L.P.
One Montgomery, Suite 2700
San Francisco, California 94104-4505
Telephone: 415.544.1900
Facsimile: 415.391.0281

Attorneys for Defendant
UPSHER-SMITH LABORATORIES, LLC

[Additional counsel listed on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLYN FISHER, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>WYETH PHARMACEUTICALS, INC., et al.,<br><br>        Defendants. | Case No. 3:17-cv-02034-LAB (MDD)<br><br>**DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND ACTION TO SAN DIEGO COUNTY SUPERIOR COURT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:       November 14, 2017<br>Time:       11:30 a.m.<br>Judge:      Hon. Larry Alan Burns<br>Courtroom:  14A |

# **TABLE OF CONTENTS**

I.     INTRODUCTION ........................................................................... 1

II.    BACKGROUND ............................................................................. 3

III.   FEDERAL JURISDICTION EXISTS OVER THIS INHERENTLY
       FEDERAL CASE. .......................................................................... 4

       A.   Federal question jurisdiction exists because a federal question is
            presented on the face of the Complaint........................................ 4

       B.   Federal question jurisdiction exists because Plaintiffs' claims
            necessarily raise substantial and disputed questions of federal law. 6

            1.   Plaintiffs' claims necessarily raise federal issues. ................. 6

            2.   Plaintiffs' claims raise substantial and disputed questions
                 about the application and effect of the FDA's Medication
                 Guide regulations. ............................................................. 12

            3.   Exercising subject matter jurisdiction to determine novel
                 questions of federal law in this case will not upset the
                 federal-state judicial balance. .......................................... 20

       C.   This Court may exercise supplemental jurisdiction over any other
            claims in the Complaint that may not raise federal questions. ....... 22

       D.   Plaintiffs are not entitled to attorneys' fees and costs because
            Defendants' basis for removal is objectively reasonable............... 23

IV.    DEFENDANTS' NOTICE OF REMOVAL IS TIMELY ...................... 25

V.     CONCLUSION ........................................................................... 25

# **TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*40235 Washington St. Corp. v. Lusardi*,
   329 F.3d 1076 (9th Cir. 2003) ............................................................... 6

*Bean v. Upsher-Smith Pharms., Inc.*,
   No. 4:16-cv-01696-RBH, 2017 WL 4348330 (D.S.C. Sept. 29, 2017) ..................... 2

*Becerra v. McClatchy Co.*,
   No. 1:09-CV-00125-OWW-SMS, 2009 WL 1514472 (E.D. Cal. May
   27, 2009) ........................................................................................ 24

*Blackford v. Wyeth Pharm., Inc.*,
   No. 17-cv-03825-MMC, 2017 U.S. Dist. LEXIS 134275 (N.D. Cal.
   Aug. 23, 2017) ................................................................................... 9

*Bowdrie v. Sun Pharm. Indus. Ltd.*,
   909 F. Supp. 2d 179 (E.D.N.Y. 2012) ................................................ 15, 19

*Brandle v. McKesson Corp.*,
   No. C 12-05970 WHA, 2013 U.S. Dist. LEXIS 112931 (N.D. Cal.
   Mar. 28, 2013) .................................................................................. 12

*Bristol-Myers Squibb v. Super. Ct. of Cal. San Francisco Cty*,
   137 S. Ct. 1773 (2017) ........................................................................ 3

*Broder v. Cablevision Sys. Corp.*,
   418 F.3d 187 (2d Cir. 2005) ............................................................ 9, 23

*Buckman Co. v. Plaintiffs' Legal Committee*,
   531 U.S. 341 (2001).......................................................................... 2, 22

*California ex rel. Lockyer v. Dynegy, Inc.*,
   375 F.3d 831 (9th Cir. 2004) .......................................................... 5, 10, 23

*City of Chi. v. Int'l College of Surgeons*,
   522 U.S. 156 (1997)........................................................................... 23

*Connolly v. Sandoz Pharms. Corp.*,
   No. 2:14-cv-152-WCO, 2014 WL 12480025 (N.D. Ga. Dec. 23, 2014) .................. 2

*County of Santa Clara v. Astra USA, Inc.*,
401 F. Supp. 2d 1022 (N.D. Cal. 2005) ................................................................. 15

*David v. Medtronic, Inc.*,
No. 13-CV-04441, 2013 WL 12132038 (C.D. Cal. Aug. 6, 2013) ......................... 19

*Eunice v. United States*,
No. 12CV1635-GPC (BGS), 2013 WL 756168 (S.D. Cal. Feb. 26, 2013) ................................................................................................................... 10

*Fed. Home Loan Mortgage Corp. v. Lettenmaier*,
No. CV-11-165-HZ, 2011 WL 1297960 (D. Or. Apr. 5, 2011) .............................. 25

*Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*,
463 U.S. 1 (1983) .................................................................................................. 13

*Gaeta v. Perrigo Pharm. Co.*,
469 F. App'x 556 (9th Cir. 2012) ............................................................................ 7

*Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*,
545 U.S. 308 (2005) ..................................................................................... *passim*

*Gunn v. Minton*,
133 S. Ct. 1059 (2013) ........................................................................ 2, 6, 13, 17

*H.R. ex rel. Reuter v. Medtronic, Inc.*,
996 F. Supp. 2d 671 (S.D. Ohio 2014) ........................................................... 16, 19

*In re Zyprexa Prods. Liab. Litig.*,
375 F. Supp. 2d 170 (E.D.N.Y. 2005) .................................................................. 20

*In re Zyprexa Prods. Liab. Litig.*,
Nos. 04-MD-1596, 07-CV-1933, 2008 WL 398378 (E.D.N.Y. Feb. 12, 2008) ...................................................................................................................... 15

*Jenkins v. Medtronic, Inc.*,
984 F. Supp. 2d 873 (W.D. Tenn. 2013) ......................................................... 16, 19

*King v. Nat'l Gen. Ins. Co.*,
129 F. Supp. 3d 925 (N.D. Cal. 2015) .................................................................. 10

*Ko v. Mut. Pharm. Co.*,
No. C-13-00890-RMW, 2013 WL 5692375 (N.D. Cal. Oct. 18, 2013) ................... 7

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

*Lee v. Am. Nat. Ins. Co.*,
  260 F.3d 997 (9th Cir. 2001) ...................................................................... 7

*Lussier v. Dollar Tree Stores, Inc.*,
  518 F.3d 1062 (9th Cir. 2008) ................................................................... 24

*Martin v. Franklin Capital Corp.*,
  546 U.S. 132 (2005).................................................................................... 24

*McDaniel v. Upsher-Smith Pharms., Inc.*,
  229 F. Supp. 3d 707 (W.D. Tenn. 2017) .............................................. 2, 8

*McMaster v. Coca-Cola Bottling Co.*,
  392 F. Supp. 2d 1107 (N.D. Cal. 2005)................................................... 12

*Merrell Dow Pharms. v. Thompson*,
  478 U.S. 804 (1986).............................................................. 16, 17, 18, 20

*Moretti v. Wyeth, Inc.*,
  579 F. App'x 563 (9th Cir. 2014) ............................................................... 7

*Mut. Pharm. Co. v. Bartlett*,
  133 S. Ct. 2466 (2013)................................................................................. 1

*Perdue v. Wyeth Pharms., Inc.*,
  209 F. Supp. 3d 847 (E.D.N.C. 2016) ....................................................... 2

*Phelps v. Wyeth, Inc.*,
  857 F. Supp. 2d 1114 (D. Or. 2012) ........................................................... 7

*PLIVA, Inc. v. Mensing*,
  564 U.S. 604 (2011)..................................................................................... 1

*Reichel v. McKesson Corp.*,
  No. 12-05945 RS, 2013 WL 12173919 (N.D. Cal. Mar. 25, 2013) ........ 12

*Sangimno v. Bayer Corp.*,
  No. C 17-01488, 2017 U.S. Dist. LEXIS 89152 (N.D. Cal. June 6,
  2017) ....................................................................................................... 12

*Schendel v. Ace Mortg. Funding, LLC*
  No. 2:11–CV-02779 JAM-JFM, 2012 U.S. Dist. LEXIS 17941 (E.D.
  Cal. Feb. 13, 2012) ................................................................................ 23

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

*Small v. Amgen, Inc.*,
    134 F. Supp. 3d 1358 (M.D. Fla. 2015) ................................................................ 14

*Stephens v. Teva Pharms., USA, Inc.*,
    No. CV-13-J-1357-NE, 2014 WL 12605656 (N.D. Ala. Nov. 19, 2014) ............ 3, 11

*Streed v. EON Labs, Inc.*,
    No. 17-cv-02609-MMC, 2017 WL 3616591 (N.D. Cal. Aug. 23, 2017) ......... *passim*

*Utley v. Varian Assocs., Inc.*,
    811 F.2d 1279 (9th Cir. 1987) ............................................................................ 16

*Victoriano v. Classic Residence Mgmt.*,
    No. 14-2346, 2015 U.S. Dist. LEXIS 77886 (S.D. Cal. June 15, 2015) ................ 24

*Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*,
    27 F.3d 911 (3d Cir. 1994) ................................................................................. 18

*W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*,
    815 F.2d 188 (2d Cir. 1987) ............................................................................... 18

**Statutes and Regulations**

28 U.S.C. § 1367 .................................................................................................... 23

28 U.S.C. § 1446(b)(2)(B) ...................................................................................... 25

21 C.F.R. § 208 .................................................................................................. 3, 4

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

## I.    INTRODUCTION

Despite what Plaintiffs may argue, this is not a traditional product liability case. Plaintiffs do not seek stronger or additional warnings for a drug product. Instead, Plaintiffs seek to dictate how federally-mandated, patient-directed labeling called a Medication Guide should be distributed, notwithstanding that the document's distribution is governed expressly and solely by federal law. Plaintiffs further seek to police promotion of the drug for "off-label" uses, another concept derived solely from federal law, and enforceable only by the federal government.

The unusual circumstances here warrant federal question jurisdiction. Plaintiffs allege personal injury claims against 10 purported generic manufacturers (" the Generic Defendants"), one brand-name manufacturer, and one distributor, of amiodarone, an FDA-approved, anti-arrhythmic prescription heart medication. What is unusual is that the only theories Plaintiffs can pursue against the Generic Defendants are based on substantial and disputed questions of federal law. Indeed, in nearly identical cases filed in numerous federal courts across the country involving the same drug, Plaintiffs' counsel has conceded that the claims challenge how federally-mandated Medication Guides were distributed, rather than the content of the labeling itself.

To be sure, Plaintiffs attempt to obscure the nature of their claims against the Defendants by improperly lumping all Defendants together in undifferentiated allegations, implying that each allegation is viable against every defendant, when, as Plaintiffs know, it is not. Plaintiffs' allegations of failure to warn and sale of an unreasonably dangerous drug may initially give the appearance that this is a typical product liability lawsuit until one recognizes that such allegations against the Generic Defendants are preempted under *PLIVA, Inc. v. Mensing*, 564 U.S. 604 (2011), *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466 (2013), and their Ninth Circuit progeny. The only two theories that could potentially avoid preemption under *Mensing* and *Bartlett* are the alleged failure to provide patients the federally-mandated Medication Guide that

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

warned of specific adverse events Plaintiffs allegedly experienced, and the alleged improper promotion of amiodarone for uses not approved by FDA, i.e., "off-label" uses. Plaintiffs' counsel has acknowledged to federal courts elsewhere that those two claims are the crux of the lawsuit. Both involve conduct exclusively regulated by federal law and which can be proven only by establishing violations of federal law.

In *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, the Supreme Court held that "a federal court ought to be able to hear claims" that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues[.]" 545 U.S. 308, 312 (2005). As discussed below, federal question jurisdiction exists here because the federal issues are necessary, substantial, disputed, and capable of resolution in federal court without disrupting the federal-state balance approved by Congress. *Id.* at 314; *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013).

The claims here are nearly identical to more than 20 other amiodarone lawsuits filed by these same plaintiffs' counsel in numerous federal courts.[1] Most of these federal suits have been dismissed as to all defendants on grounds that include preemption under *Mensing*, *Bartlett*, and/or *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), because, among other things, the claims are legally inconsistent with both the relevant statutes and the learned intermediary doctrine adopted in most states.[2] After

---

[1] *See, e.g.*, *Collette v. Wyeth Pharm., Inc.*, No. 3:16-cv-01034-JD, Dkt. 1 (N.D. Cal. 2016); *McDaniel v. Upsher-Smith Pharm., Inc.*, No. 2:16-cv-02604, Dkt. 1 (W.D. Tenn. 2016); *McLeod v. Sandoz Inc.*, No. 4:16-cv-01640-RBH, Dkt. 1 (D.S.C. 2016); *Perdue v. Wyeth Pharm., Inc.*, No. 4:15-cv-208-FL, Dkt. 1 (E.D.N.C.); *Elliott v. Sandoz, Inc.*, No. 2:16-cv-00861-RDP, Dkt. 1 (N.D. Ala. 2016); *Allain v. Wyeth Pharm., Inc.*, No. 2:14-cv-00280-KOB, Dkt. 1 (N.D. Ala. 2016).

[2] *See, e.g.*, *Bean v. Upsher-Smith Pharms., Inc.*, No. 4:16-cv-01696, 2017 WL 4348330, at *6-7 (D.S.C. Sept. 29, 2017) (finding medication guide and off-label promotion claims preempted); *McDaniel v. Upsher-Smith Pharms., Inc.*, 229 F. Supp. 3d 707, 712-13 (W.D. Tenn. 2017) (same); *Perdue v. Wyeth Pharms., Inc.*, 209 F. Supp. 3d 847, 851-

---

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

numerous dismissals on these grounds in federal court, these plaintiffs' counsel began filing suit in California state courts in an effort to avoid federal courts' consistent recognition of federal preemption and other defenses. Defendants have moved to dismiss this action on these and other fully dispositive grounds, including lack of personal jurisdiction.[3] *See, e.g.*, Def. Upsher-Smith Labs., LLC's Mot. to Dismiss (Dkt. 22-1).

Federal jurisdiction is appropriate and, accordingly, Plaintiffs' motion to remand and request for fees and costs should be denied.

## II.   BACKGROUND

Plaintiffs repeatedly attribute their purported harm to Defendants' alleged failure to provide the Medication Guide for amiodarone and alleged promotion of amiodarone for off-label uses. Compl. ¶¶ 1(b)-(e) – 53(b)-(e). Indeed, the Complaint refers to "Medication Guide" ***572 times*** and to "off-label," "not [FDA] approved," or "unapproved" uses ***267 times***. Plaintiffs cite to the purported federal "duty" to provide a Medication Guide in support of *all* of their underlying causes of action, (*see* Compl. ¶¶ 169, 176, 183, 189, 197-199, 206(f), 210, 211), and similarly allege off-label promotion in each cause of action, (*see id.* ¶¶ 167, 170, 175, 177, 182, 183, 189, 197(d), 198, 201, 206(b)-(c), 211, 218).

The Medication Guide is a document FDA requires for certain FDA-approved drugs and is intended to be provided to patients with their prescriptions. 21 C.F.R. Part

---

53 (E.D.N.C. 2016) (same); *Connolly v. Sandoz Pharms. Corp.*, No. 2:14-cv-152, 2014 WL 12480025, at *5-6 (N.D. Ga. Dec. 23, 2014) (same); *Stephens v. Teva Pharms., USA, Inc.,* No. CV-13-J-1357, 2014 WL 12605656, at *4-5 (N.D. Ala. Nov. 19, 2014) (finding claims barred under learned intermediary doctrine, among other grounds).

[3] In blatant disregard of the Supreme Court's decision last term in *Bristol-Myers Squibb v. Super. Ct of Cal, San Francisco Cty*, 137 S. Ct. 1773 (2017), 71 out-of-state residents have improperly joined their claims with the nearly identical claims of just one California resident (and his spouse). Making matters worse, none of the Plaintiffs allege use of any particular defendant's amiodarone. Most and perhaps all of the non-California defendants will have no connection at all to the California resident Plaintiff's claims.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

208. It is a federal-law requirement *only* and has no state-law corollary. *Id*. 21 C.F.R. Part 208 exclusively governs when Medication Guides are required, what they should include, how they should be disseminated or made available to distributors, packers or authorized dispensers (i.e., pharmacies), and how those distributors, packers or authorized dispensers should distribute them to patients.[4] Plaintiffs claim these regulations impose an obligation solely on manufacturers to ensure the Medication Guide *reaches* every patient who fills an amiodarone prescription and that Defendants failed to do so here. *See, e.g.*, Compl. ¶ 135. Defendants maintain that the Medication Guide regulations impose a federal requirement only *to provide or make available* Medication Guides to distributors, packers, or authorized dispensers. *Id.* § 208.24(b). Plaintiffs allege that if they had received the Medication Guide from their pharmacies they would have learned of amiodarone's serious risks and would not have used the medication prescribed, thereby avoiding injury. *See, e.g.*, Compl. ¶¶ 1(e)-53(e).

    For ease of reference by the Court, a true and correct copy of the Complaint with all federally-based references highlighted (*e.g.*, federal regulations, purported duties, "medication guide," "off-label," etc.) is attached to the Declaration of Gregg Webb, filed herewith in support of this Opposition ("Webb Decl.") as **Exhibit A**. Webb Decl., ¶ 2.

## III.   FEDERAL JURISDICTION EXISTS OVER THIS INHERENTLY FEDERAL CASE.

### A.   Federal question jurisdiction exists because a federal question is presented on the face of the Complaint.

    Under the "well-pleaded complaint rule," federal jurisdiction exists "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004), *opinion amended on denial of reh'g*, 387 F.3d 966 (9th Cir. 2004) (federal question jurisdiction present despite plaintiff's "eschewing [of] claims based on federal law" where plaintiff

---

[4] *See* 21 C.F.R. § 208.1 (scope and purpose of Medication Guide); *id.* § 208.20 (content and format requirements); *id.* § 208.24 (distribution and dispensing requirements).

4

"repeatedly cite[d]" to federal authority as a basis for its claims). In *Lockyer*, the Ninth Circuit held federal question jurisdiction justified removal in a case brought by California authorities against various energy companies. *Id.* at 841-42. Although the State originally chose to bring its claims in state court "exclusively under California unfair competition laws," federal question jurisdiction was appropriate because the action was "necessarily federal in character, and the conduct the state sought to condemn was expressly governed by" federal law. *Id.* at 839.

Similarly, here, the Complaint on its face expressly and repeatedly references and incorporates federal law. *See* **Exhibit A**. Because Plaintiffs chose to invoke federal law as the predicate for their claims, they cannot now argue they actually intended to assert only state-law duties. *See, e.g.,* Compl. ¶¶ 1(e)-53(e), 93-97, 101, 135, 136, 146, 152, 153, 154, 164 (alleging failure to provide Medication Guide, which is "a direct violation of the FDA's mandate"); *id.* ¶¶ 71, 74, 83, 90, 91, 94, 95, 96, 136, 152 (repeatedly referencing FDA Medication Guide regulations and citing to FDA-approved Medication Guides for amiodarone); *id.* ¶¶ 84-85, 88, 90, 98, 132-34, 142, 143, 147 (alleging improper promotion for off-label uses, which "violates FDA regulations") (citing 21 U.S.C. §§ 331(z), 360aaa).

Based on the face of the Complaint, the core claims in this case—and the ***only*** actionable claims against the Generic Defendants—will turn on whether Defendants complied with federal regulations specifying how manufacturers must either provide or make available Medication Guides to authorized dispensers, and federal law governing off-label promotion of prescription drugs. This is true regardless of how the claims are cast. Just as the plaintiff in *Lockyer* could not escape federal jurisdiction by couching claims as arising under state tort law when those claims necessarily implicated significant federal issues, Plaintiffs here cannot compel remand simply because they disclaim having specifically pled a federal cause of action that is obviously dependent on federal law. *See id.*; *see also 40235 Washington St. Corp. v. Lusardi*, 329 F.3d 1076,

1079 (9th Cir. 2003) ("a well-pleaded complaint presents a federal question if the plaintiff's right to such relief necessarily turn[s] on some construction of federal law") (alteration in original) (citation and internal quotation marks omitted). Indeed, here, Plaintiffs' Medication Guide and off-label promotion claims do far more than necessarily implicate significant federal issues, they are entirely dependent on federal regulations and would not exist without those regulations.

**B.    Federal question jurisdiction exists because Plaintiffs' claims necessarily raise substantial and disputed questions of federal law.**

Separate and apart from the well-pleaded complaint rule, "[f]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn*, 133 S. Ct. at 1065. Removal here satisfies this test.

1.    Plaintiffs' claims necessarily raise federal issues.

Plaintiff's lawsuit necessarily involves federal issues because the core claims against all Defendants, and the only actionable claims against the Generic Defendants are for a purported failure to provide a Medication Guide and alleged off-label promotion.  Assuming Plaintiffs could evade federal preemption as to the Generic Defendants, both of these claims must be proven by establishing violations of federal law. Plaintiffs argue their lawsuit is "a traditional products liability-state law case based on Defendants' failure to properly disclose the true dangers associated with Amiodarone use" and that the claims are not dependent on violations of FDA regulations. Mot. at 15. But Plaintiffs critically ignore that their "traditional" product liability allegations, which boil down to failure to provide adequate warnings and sale of an "unreasonably dangerous" drug, do not apply to the Generic Defendants, because such claims are—as Plaintiffs' counsel has acknowledged numerous times to other federal courts—barred under *Mensing* and *Bartlett*, which require the labeling and design for generic drugs to match that of the brand-name drug. The Ninth Circuit and its district courts have

6

repeatedly held that such claims are preempted, regardless of the legal theory alleged. *See Moretti v. Wyeth, Inc.*, 579 F. App'x 563, 565-66 (9th Cir. 2014) (affirming dismissal of failure-to-warn claims); *Gaeta v. Perrigo Pharm. Co.*, 469 F. App'x 556 (9th Cir. 2012), *aff'g*, 562 F. Supp. 2d 1091 (N.D. Cal. 2008) (dismissing negligence and breach-of-warranty claims); *Ko v. Mut. Pharm. Co.*, No. C-13-00890-RMW, 2013 WL 5692375, at *2 (N.D. Cal. Oct. 18, 2013) (dismissing claims for strict liability, negligence, breach of warranty, and unfair competition); *Phelps v. Wyeth, Inc.*, 857 F. Supp. 2d 1114, 1123-24, 1132 (D. Or. 2012) (dismissing claims for negligence, strict liability, breach of warranty, misrepresentation, and fraud). Moreover, Plaintiffs cannot use potential traditional state-law product liability claims against other defendants to *evade* federal jurisdiction arising from claims against the Generic Defendants. The law is clear that even if there were a valid state-law claim against the Generic Defendants, just one claim out of many that raises a federal question requires denial of Plaintiffs' remand motion. *Lee v. Am. Nat. Ins. Co.*, 260 F.3d 997, 1002-04 (9th Cir. 2001) (finding federal jurisdiction over a case where "there is subject matter jurisdiction over one or more of the claims alleged."), *superseded in part on other grounds by statute*, *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1021 n.10 (9th Cir. 2011).

Plaintiffs' counsel has included these same allegations in the virtually identical complaints filed in numerous other federal courts, and then systematically disavowed those allegations as traditional product liability in response to motions to dismiss, arguing that "[t]he allegation is not one of adequacy or 'content' failure to warn (i.e., the verbiage or even the format fails), but an actual and physical negligent failure of [Defendants] to fulfill [their] ***federally mandated responsibility*** to ensure Medications Guides are available for distribution directly to patients with each prescription." *See, e.g.*, *Elliott v. Sandoz, Inc.*, No. 2:16-CV-00861, Dkt. 12 at 9-10 N.D. Ala. July 18, 2016); *McDaniel v. Upsher-Smith Pharms., Inc.*, 229 F. Supp. 3d 707, 712 (W.D. Tenn. 2017) (finding complaint included traditional failure-to-warn allegations but

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

acknowledging plaintiff "clarified" that the claim is for failure to provide the Medication Guide and not content-related).[5]

Plaintiffs suggest their Medication Guide and off-label promotion claims are merely examples of federal violations that support their state common law claims, which "could be proven without exclusive reliance on violations of federal law ...." *Id.* at 16. But this ignores that Plaintiffs' purported "independent theories" under state law (i.e., strict liability, negligent failure to warn, negligent marketing, etc.) are not viable as to the Generic Defendants under binding Supreme Court precedent.   The only claims

---

[5] Plaintiffs' counsel has repeatedly argued to federal courts across the country that these lawsuits are about failure to provide the Medication Guide and off-label promotion. *See, e.g., Perdue*, No. 4:15-cv-208, Dkt. 45 at 3 (E.D.N.C. Mar. 24, 2016) ("Plaintiff alleges common law state ***wrongful death based upon Defendants' failure to provide a medication guide.***"); *id.* at 10 ("***FDA regulations set Defendants' duty in this case*** ...."); *McLeod v. Sandoz, Inc.*, No. 4:16-cv-01640, Dkt. 12 at 9 (D.S.C. July 19, 2016) ("The complaint includes supporting factual allegations related to the **'off-label' use** and the ***negligent failure to provide for the distribution of required warnings in violation of federal rules and regulations***. Allegations that clearly negate federal preemption, including the sale of a mislabeled drug, are the ***gravamen*** of the McLeod's complaint."); *McDaniel*, No. 2:16-cv-02604, Dkt. 23 at 9 (W.D. Tenn. Sept. 21, 2016) (same arguments); *Collette*, No. 3:16-cv-01034, Dkt. 52 at 5 (N.D. Cal. Nov. 4, 2016) (***"[T]his is not a simple failure to warn case***. Plaintiff alleges Amiodarone was prescribed for an unauthorized, unapproved and ***illegal 'off-label' use*** only after Defendants engaged in, supported and benefitted from 'off-label' promotion ... and failed to physically provide for the appropriate distribution of the ***federally mandated warnings*** in the form of the Medication Guide."); *id.* (***"Plaintiff does not allege Defendants should 'change' or 'alter' the existing warning label*** ...."); *Elliott*, No. 2:16-CV-00861, Dkt. 12 at 12 (N.D. Ala. July 18, 2016) ("Elliott does not allege that the contents of the label should have been changed, but that the ***Medication Guide and its warnings were not provided to him in accordance with the FDA mandate***."); *Allain v. Wyeth-Ayerst Labs., Inc.*, No. 2:14-cv-00280, Dkt. 58 at 7–8 (N.D. Ala. June 29, 2015) (***Plaintiff "does not allege that the contents of the label should have been changed***, but that the warnings in the form of the Medication Guide were not provided in accordance with the FDA mandate.") (all emphases added).

---

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

Plaintiffs could potentially pursue against the Generic Defendants—and the only claims this plaintiffs' counsel has *ever* argued they intend to pursue against the Generic Defendants, in nearly identical complaints—are the Medication Guide and off-label promotion theories. Plaintiffs' counsel has likewise framed its claims against Wyeth as failure to provide the Medication Guide and off-label promotion.[6] Plaintiffs do not—and cannot—dispute that these purported claims are premised on alleged violations of federal law. Thus, even if Plaintiffs could arguably pursue traditional product liability theories against other defendants, they cannot pursue them against the nine Generic Defendants here. The presence of necessary federal issues in the claims against the Generic Defendants is enough to exercise jurisdiction here. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005) ("[A] single claim over which federal-question jurisdiction exists is sufficient to allow removal").[7]

Plaintiffs have tried to obscure the factual and legal differences in their claims against the Defendants by improperly lumping all Defendants together in a series of

---

[6] *See Allain*, 2015 WL 178038, at *4–5 (noting that "[p]laintiff does not challenge the sufficiency of the warning but only that [he] was not provided a Medication Guide").

[7] Plaintiffs rely on *Streed v. EON Labs, Inc.*, No. 17-cv-02609, 2017 WL 3616591 (N.D. Cal. Aug. 23, 2017), and *Blackford v. Wyeth Pharm., Inc.*, 2017 U.S. Dist. LEXIS 134275 (N.D. Cal. Aug. 23, 2017) (collectively "*Streed*"), in which two nearly identical cases were remanded. The court held there was no necessary federal question because plaintiffs' state-law claims were "supported by a theory independent of any violation of federal law or regulation," specifically, "defendants' breach of their duty to adequately warn of known risks and to market and sell a safe product." *Streed*, 2017 WL 3616591, at *3-4. However, the court failed to distinguish between traditional failure-to-warn claims and the federally-based Medication Guide claims plaintiffs were asserting in *Streed* (like here), or to recognize that traditional failure-to-warn claims, even if actually pled in *Streed*, could not be brought against the nine Generic Defendants and at most could be asserted only against the brand-name defendant. Accordingly, the court did not consider that the only potentially viable claims against the Generic Defendants were the Medication Guide and off-label claims, both of which are premised on violations of federal law. As such, the court's conclusion that federal law was "not a necessary element" of any of the claims was, respectfully, in error. *Id*. at *3 (citation omitted).

9

undifferentiated, conclusory allegations, including alleged fraudulent conduct. By failing to plead their claims individually against each defendant, Plaintiffs imply that all of the claims can be brought against all Defendants, when they know that is not true, nor is it their intention. Such pleading fails to satisfy Federal Rules of Civil Procedure 8 and 9(b). *Eunice v. United States*, No. 12CV1635, 2013 WL 756168, at *3 (S.D. Cal. Feb. 26, 2013) ("Lumping all 'defendants' together and facts regarding the incident does not put a particular defendant on notice as to grounds for the allegations"); *King v. Nat'l Gen. Ins. Co.*, 129 F. Supp. 3d 925, 943 (N.D. Cal. 2015) (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant … and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'"). It also cannot support remand, as federal jurisdiction is determined not by improper pleadings but instead "on the face of the plaintiff's *properly* pleaded complaint." *Lockyer*, 375 F.3d at 838 (emphasis added).

Plaintiffs do not intend to pursue "traditional" failure-to-warn claims, i.e., claims based on the content of the labeling—against any defendant. This is evident from their simultaneous (and contradictory) allegations that the Medication Guide contained adequate warnings.[8] *See, e.g.*, Compl. ¶¶ 1(b)-36(b) ("Nor did [Plaintiffs] receive the

---

[8] As one federal judge has pointed out, these allegations "expose[] a conceptual flaw in Plaintiffs' case":

> To avoid preemption under *Mensing* and *Bartlett*, Plaintiffs state they do not challenge the adequacy or content of the FDA approved warnings for amiodarone. To support their Medication Guide claim, Plaintiffs also contend the Medication Guide adequately set forth the risks associated with amiodarone and if [plaintiff] had received the Medication Guide, he would not have taken amiodarone. Yet, in order to overcome the learned intermediary doctrine in this case, [plaintiff's] prescribing physicians would

---

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1  FDA-mandated Medication Guide the FDA requires to be distributed with a prescription

2  of Amiodarone, which warns the user of the extremely dangerous, potentially life-

3  threatening complications associated with Amiodarone."); *id.* ¶¶ 1(e)-36(e) ("[Plaintiffs]

4  received and ingested a mislabeled drug provided without the benefit of the FDA

5  mandated Medication Guide [and] w[ere] thus unaware of the dangers [they] faced ….");

6  *id.* ¶¶ 1(f)-36(f) ("Had [Plaintiffs] been provided [the Medication Guide], [they] would

7  have been aware of the serious, potentially life-threatening side effects and would not

8  have taken Amiodarone.").[9]

9       Plaintiffs' counsel cannot tell other federal courts that these cases are about

10  violations of federal regulations governing distribution of Medication Guides and off-

11  label promotion in an effort to defeat motions to dismiss, and then turn around and tell

12  this Court something else to evade federal jurisdiction.

13

14  _____

15         essentially have to testify that they were unaware of a risk that Plaintiffs
           allege was adequately disclosed in the Medication Guide for amiodarone.

16
     *McLeod*, No. 4:16-cv-01640-RBH, 2017 WL 1196801, at *10 (D.S.C. Mar. 31, 2017)
17   (internal citation omitted); *see Stephens*, 2014 WL 12605656, at *3 (alleging failure to
18   warn while alleging that the Medication Guide would have informed the decedent of the
     serious risks of amiodarone was an implicit "recognition that the warnings provided
19   were sufficient to warn users of the medication of potential side effects").

20   [9] While Plaintiffs also allege that "[i]n addition to not receiving the Medication Guide,
21   [they were] not provided up to date warning labels that would have warned [them] of
     the serious, potentially life-threatening, side effects of Amiodarone," *id.* ¶¶ 1(f)-36(f),
22   this conclusory allegation is insufficient and the Court should disregard it for two
23   reasons. First, other than the Medication Guide, Plaintiffs do not identify any "warning
     labels" that Defendants were required to provide to them (there is no other form of
24   patient labeling for amiodarone). Second, Plaintiffs do not allege the manner in which
25   any such "warning labels" were not "up to date," especially in light of Plaintiffs'
26   repeated allegations that the Medication Guide contained adequate warnings. As such,
     the allegation is implausible and fails to provide Defendants notice of the basis for the
27   claim.

28

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

The cases Plaintiffs rely on are inapposite. For example, in *Sangimno v. Bayer Corp.*, No. C 17-01488, 2017 U.S. Dist. LEXIS 89152, at *7 (N.D. Cal. June 6, 2017), the court remanded because "none of plaintiffs' claims relies on federal violations as a necessary element." Similarly, *Brandle v. McKesson Corp.* dealt with whether "generic defendants breached their state duty to warn by *not* making various labeling changes *in spite* of the federal duty of sameness," not whether defendants were liable *because of* federal law, as Plaintiffs assert here. 2013 U.S. Dist. LEXIS 112931, at *3 (N.D. Cal. Mar. 28, 2013) (emphasis in original). Likewise, in *Reichel*, the "complaint refers to 'federal standards and requirements' in a passing manner" and not, as here, in support of all of the underlying causes of action. *Reichel v. McKesson Corp.*, No. 12-05945 RS, 2013 WL 12173919, at *3 (N.D. Cal. Mar. 25, 2013). In these cases, the "federal duty [was] incidental to plaintiffs' state-law claims, and not a necessary element of them," whereas Plaintiffs' claims here for failure to distribute the Medication Guide and off-label promotion rise and fall on the application of federal law. *Brandle,* 2013 U.S. Dist. LEXIS 112931, at *4. *McMaster v. Coca-Cola Bottling Co.*, 392 F. Supp. 2d 1107, 1115 (N.D. Cal. 2005), is likewise unhelpful to Plaintiffs. That court remanded an employment action in which there was only the mere possibility of a question, arising out of only one cause of action, that would require a cursory reference to federal law and for which the answers were, in any event, easily accessible in the "plain language" of the regulations. Here, by contrast, the Court is *certain* to have to interpret and apply federal law and in a potentially novel manner to resolve the claims against the Defendants—in particular, the Generic Defendants.

> 2. <u>Plaintiffs' claims raise substantial and disputed questions about the application and effect of the FDA's Medication Guide regulations.</u>

Plaintiffs' claims raise substantial and disputed questions regarding the scope, applicability, and effect of FDA's Medication Guide regulations, along with federal law governing the off-label promotion of prescription drugs. Resolution of these inherently federal disputes will be central to the Court's adjudication of Plaintiffs' claims.

12

The Supreme Court has long recognized that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable*, 545 U.S. at 312; *accord Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 13 (1983). The exercise of federal jurisdiction in such cases reflects the "commonsense notion that a federal court ought to be able to hear claims recognized under state law that nevertheless turn on substantial questions of federal law." *Grable*, 545 U.S. at 312. Although Plaintiffs claim they have pled tort claims under state law, their Medication Guide and off-label promotion claims warrant federal question jurisdiction because they "implicate significant federal issues" under *Grable*. *Id*.

In *Grable*, the Supreme Court held a state-law-based quiet title action was properly within the district court's subject matter jurisdiction even though federal law did not create the cause of action or otherwise expressly allow for it to be heard in federal court. *Id.* at 311. There, five years after the defendant purchased real property pursuant to a federal tax delinquency sale, the former owner sued the defendant claiming defective service of the notice of the property's seizure. *Id.* Because the quiet title action was "premised" on the adequacy of notice under federal law, which was also the principal contested issue, the Court upheld a finding of federal question jurisdiction. *Id.* at 315. Even though state law may have controlled other issues in the case, the Court held "the meaning of the federal tax provision" was a sufficiently "important issue of federal law." *Id.*; *see Gunn*, 133 S. Ct. at 1066 ("The substantiality inquiry under *Grable* looks . . . to the importance of the issue to the federal system as a whole.") In recognition of the need to nonetheless preserve federal-state judicial balance, the Court explained that despite the national impact of its decision, it would portend "only a microscopic effect on the federal-state division of labor." *Id.*

The "meaning" and effect of FDA's Medication Guide regulations are "important issue[s] of federal law" that affect the "federal system as a whole" in two principal ways. First, the Court's resolution of Plaintiffs' claims will directly impact federalism,

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

specifically, the relationship between FDA's Medication Guide regulations and traditional state-law tort duties. Plaintiffs allege that the federal Medication Guide rule imposes a federal "duty" on manufacturers to provide warnings directly to patients. In contrast, under the learned intermediary doctrine, which has been adopted in nearly all states, a manufacturer's duty to warn of a prescription drug's risks extends only to the prescribing physician, not the patient directly. Thus, Plaintiffs' claims, on their face, raise the important federal question of whether the Medication Guide regulations affirmatively "preempt" the learned intermediary doctrine under state law.[10] FDA has stated that the Medication Guide regulations are not intended to alter a manufacturer's standard of care under state law and at least one federal court agrees. *Small v. Amgen, Inc.*, 134 F. Supp. 3d 1358, 1370 (M.D. Fla. 2015) (holding that the "learned intermediary doctrine is not preempted by the medication guide regulations"). Plaintiffs dispute this, and claim the Medication Guide regulations trump longstanding state law. The Court's determination of this issue will substantially impact the pharmaceutical industry, and healthcare providers and patients using this class of medications nationwide.

Second, the Court's interpretation of the meaning of the Medication Guide regulations will have a major impact nationwide. Plaintiffs allege that the Medication Guide regulations require manufacturers to ensure that each patient receives a Medication Guide from the pharmacy with each amiodarone prescription, not just to ensure distribution of the Medication Guide to pharmacies, or make the Medication Guide available to pharmacies, as Defendants contend. The Court's resolution of this question and determination of what actions by manufacturers do or do not comply with

---

[10]   Plaintiffs are essentially contending that the federal Medication Guide regulations preempt Defendants' state-law defenses based on the learned intermediary doctrine. Because Plaintiffs' claims raise the issue of preemption offensively, rather than Defendants raising it as a defense, exercising federal question jurisdiction is proper.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

the regulations will affect the day-to-day business operations of pharmaceutical manufacturers, distributors, pharmacies, hospitals, and clinics across the country.[11]

The scope and nature of Defendants' purported obligations under the federal Medication Guide regulations and FDA's regulatory oversight governing Medication Guides are sufficiently substantial and disputed to establish federal question jurisdiction here. *See Bowdrie v. Sun Pharm. Indus. Ltd.*, 909 F. Supp. 2d 179 (E.D.N.Y. 2012) (denying remand where complaint repeatedly asserted violations of federal statutes and regulations governing updating of generic drug labeling and bioequivalence requirements such that a substantial and disputed federal question was presented on the face of the complaint); *see also County of Santa Clara v. Astra USA, Inc*., 401 F. Supp. 2d 1022, 1026 (N.D. Cal. 2005) (invoking federal question jurisdiction where plaintiff alleged state-law claims against pharmaceutical manufacturers regarding Medicaid drug charges because issues "that impact a complex federal regulatory scheme" are substantial).

Federal courts have also found that federal question jurisdiction exists in cases asserting state-law claims alleging off-label promotion like those pled here. For example, in *In re Zyprexa Products Liability Litigation*, Nos. 04-MD-1596, 07-CV-1933, 2008 WL 398378, at *6 (E.D.N.Y. Feb. 12, 2008), the court found claims asserting "promotion [of a pharmaceutical] … for an off-label use is [a] central and disputed" issue, and the plaintiff's repeated references to alleged off-label promotion in the complaint "establish[d] that [the plaintiff] regards . . . [these] alleged violations of federal law as essential to its case," thus conferring federal question jurisdiction and

---

[11] To be clear, Defendants dispute that federal law requires them to ensure Medication Guides reach each patient as Plaintiffs allege.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

making remand improper.[12] Defendants deny they were involved in any improper off-label promotion of amiodarone.

Plaintiffs argue that *Grable* represents an "extremely narrow exception" to the general rule that federal law violations alleged in the context of state-law claims do not confer federal jurisdiction. *See* Mot. at 13. The difference here, however, is that the requirements to distribute Medication Guides or make them available to authorized dispensers and the prohibition on off-label promotion are entirely federal concepts that do not exist under state law. Even under a narrow reading of *Grable*, Plaintiffs' Complaint falls within its purview, and none of the cases cited by Plaintiffs is to the contrary.

Relying on two pre-*Grable* decisions, *Merrell Dow Pharmaceuticals v. Thompson*, 478 U.S. 804 (1986) and *Utley v. Varian Associates, Inc.*, 811 F.2d 1279 (9th Cir. 1987), applying *Merrell Dow*, Plaintiffs argue the federal issues here are not "substantial" because no private right of action exists for violations of the FDCA. Mot. at 18-19. This argument misses the mark because, as Plaintiffs concede, "'the absence of a private right of action is no longer dispositive after *Grable*,'" but instead is just one factor in the "assessment of the 'sensitive judgments about congressional intent that § 1331 requires.'" Mot. at 18-19 (quoting *Shanks v. Dressel*, 540 F.3d 1082, 1093 (9th Cir. 2008)).

The Supreme Court made clear in *Grable* that a federal private right of action is not a prerequisite for federal question jurisdiction. In fact, the Supreme Court granted certiorari on the specific question of whether a federal cause of action is necessary to

---

[12] *See also H.R. ex rel. Reuter v. Medtronic, Inc.*, 996 F. Supp. 2d 671, 679 (S.D. Ohio 2014) (finding federal question jurisdiction in removed medical device case where the Court found "plaintiffs cannot prevail unless they allege and ultimately prove a violation of federal law," because off-label promotion allegations "necessarily involve 'an issue … closely bound by federal law'"); *Jenkins v. Medtronic, Inc.*, 984 F. Supp. 2d 873, 878-80 (W.D. Tenn. 2013) (same).

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

finding federal question jurisdiction and definitively held it is not. *Grable*, 545 U.S. at 317. Indeed, the Court rejected the plaintiff's effort to overcome federal question jurisdiction based on the lack of a federal private right of action, finding *Merrell Dow* read as a whole "cannot be read as overturning decades of precedent … and converting a federal cause of action from a sufficient condition for federal-question jurisdiction into a necessary one." *Id.* Thus, *Merrell Dow* and *Utley* do not control here.[13]

Plaintiffs argue that because *Merrell Dow* involved pharmaceuticals and product liability allegations, and jurisdiction was found lacking there, jurisdiction is necessarily lacking in every case involving pharmaceutical product liability allegations. On the contrary, unlike in *Merrell Dow*, in which the plaintiffs asserted a violation of federal law as evidence of negligence in support of only ***one*** of several state-law product liability claims alleged, the claims alleged against the Defendants—and indeed, ***all*** of the claims pled against the Generic Defendants—premise liability on the alleged failure to meet federal Medication Guide obligations and the alleged promotion of amiodarone for uses not approved by the FDA—theories that require Plaintiffs to establish violations of federal law.  Plaintiffs cannot prove these claims any other way.

*Merrell Dow*, decided more than 30 years ago, did not foreclose the possibility that a state-law cause of action alleging federal violations could raise a substantial issue of federal law, given the inherently case-specific inquiry required to determine whether federal question jurisdiction exists. Rather, the Court simply recognized the need for "principled, pragmatic distinctions" and "careful judgments about the exercise of federal judicial power in an area of uncertain jurisdiction." *Merrell Dow*, 478 U.S. at 813-14 (citing *Franchise Tax Bd.*, 463 U.S. at 20-21); *see also W. 14th St. Commercial Corp. v. 5 W. 14th Owners Corp.*, 815 F.2d 188, 196 (2d Cir. 1987) ("[A]ssuming that plaintiffs

---

[13] The Court may reasonably conclude *Merrell Dow* no longer controls after *Grable* and *Gunn*, but it need not do so given the key factors that distinguish this case from *Merrell Dow*.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

have no private right of action under [the Co-op Abuse Relief Act], we conclude that the federal element in plaintiffs' state cause of action would still be sufficiently substantial to confer arising under jurisdiction."); *Virgin Islands Hous. Auth. v. Coastal Gen. Constr. Servs. Corp.*, 27 F.3d 911, 917 (3d Cir. 1994) ("The nature of the federal interest at stake is determinative of whether it is sufficiently substantial to displace state law.").

*Merrell Dow* also cited approvingly to the Sixth Circuit's opinion articulating why such a limited federal issue would not create a federal question in that case as pled, but also theorizing about examples of when a federal question ***would*** exist:

> Federal question jurisdiction would . . . exist only if plaintiffs' right to relief *depended necessarily* on a substantial question of federal law. Plaintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent. Because the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA, the plaintiffs' causes of action did not depend necessarily upon a question of federal law.

*Merrell Dow*, 478 U.S. at 806-07 (quoting and affirming *Thompson v. Merrell Dow Pharm., Inc.*, 766 F.2d 1005, 1006 (6th Cir. 1985)) (emphasis in original). What the Sixth Circuit found did not exist in *Merrell Dow* ***does exist here***, however. The claims in *Merrell Dow* were traditional failure-to-warn claims that sought to use violation of the federal misbranding statute as additional evidence of negligence under state law. By contrast, Plaintiffs have no traditional failure-to-warn claims against the Generic Defendants, having conceded to numerous federal courts that such claims are not viable, or against Wyeth, having disavowed these claims. Thus, the only potentially viable claims against the Defendants depend exclusively on violations of federal law.

Another district court, distinguishing *Merrell Dow* and exercising federal question jurisdiction over analogous claims premised on alleged violations of federal requirements involving prescription drugs, held:

> [i]n this case, the federal issue involved goes far beyond simply incorporating a federal standard into a state law cause of action. To the extent they invoke the "federal duty of sameness," Plaintiffs' causes of

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

> action implicate the labeling requirements for generic drug manufacturers nationwide. The federal question present in this case involves a responsibility that is in the first instance, and primarily, federal: regulation of the manufacture, marketing, and distribution of drugs.

*Bowdrie*, 909 F. Supp. 2d at 184-85; *see also H.R. ex rel. Reuter* at 679 (finding off-label promotion allegations "necessarily involve an issue closely bound by federal law"); *Jenkins*, 984 F. Supp. 2d at 878-80 (motion to remand denied where "plaintiffs cannot prevail unless they allege and ultimately prove a violation of federal law").[14]

Likewise, here, by invoking the exclusively federal requirement to provide or make available Medication Guides and the alleged federal duty to ensure they are delivered to patients, as well as federal law governing off-label promotion, Plaintiffs' claims implicate "requirements for [prescription] drug manufacturers nationwide," and the "case involves a responsibility that is in the first instance, and primarily, federal: regulation of the . . . marketing[] and distribution of drugs." *Bowdrie*, 909 F. Supp. 2d at 184-85. As such, unlike in *Merrell Dow*, Plaintiffs' claims against the Defendants here necessarily raise substantial and disputed questions of federal law:

> The specific allegations and subtle distinctions in pleadings among pharmaceutical cases may require exercise of jurisdiction in cases which appear close to, but jurisdictionally different from, *Merrell Dow*. In the instant case[], the substantial [Medication Guide] provisions involved and the allegations about the violation of federal law through improper off-label use present a core of substantial issues more federally oriented than those in *Merrell Dow*. Federal jurisdiction lies under *Grable*.

---

[14] Plaintiffs' reliance on *David v. Medtronic, Inc.*, No. 13-CV-04441, 2013 WL 12132038, at *4 (C.D. Cal. Aug. 6, 2013) is clearly misplaced for this reason. In that case, the federal question was deemed insufficiently substantial and ultimately unnecessary to resolution of the claims, whereas this case rises or falls on this Court's interpretation of federal law. *See id.* at *4 (finding no federal question jurisdiction where "[p]laintiffs' Complaint rests on 10 state law causes of action, each of which can be resolved under state law without any determination under the FDCA").

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

*In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172-73 (E.D.N.Y. 2005). "[T]he enforcement provisions of the FDCA quite clearly express a preference for having federal courts interpret the FDCA and provide remedies for its violation." *Merrell Dow*, 478 U.S. at 831 (Brennan, J., dissenting). Accordingly, a federal court is the appropriate forum to decide these important issues.[15]

       3.    <u>Exercising subject matter jurisdiction to determine novel questions of federal law in this case will not upset the federal-state judicial balance.</u>

The Court's exercise of subject matter jurisdiction in this case will not disturb the federal-state judicial balance. Plaintiffs sound the alarm, invoking *Merrell Dow* and arguing that exercising jurisdiction here will cause "any pharmaceutical or medical device case" involving alleged violations of FDA regulations to be "litigated in federal court, and that state courts would be deprived of jurisdiction" causing "a potentially enormous shift" of state tort cases into federal court. Mot. at 19-20. But that is not true. In *Merrell Dow*, "the Court treated the combination of no federal cause of action and no preemption of state remedies for misbranding as an important clue to Congress's conception of the scope of jurisdiction to be exercised under § 1331." *Grable*, 545 U.S. at 318. The Court viewed the absence of a private right of action, "not as a missing federal door key, always required, but as a missing welcome mat, required in the circumstances, when exercising federal jurisdiction over a state misbranding action

---

[15] The *Streed* court concluded the federal issues were not substantial, finding that plaintiffs had not raised "an issue of importance … to the federal system as a whole" and that the absence of a private right of action under *Merrell Dow* suggests FDCA violations are not "substantial" enough to warrant federal jurisdiction. *Streed*, 2017 WL 3616591, at *4-5. Respectfully, the court erred on both counts. The court did not address Defendants' federalism argument based on the interplay between the federal Medication Guide regulations and the learned intermediary doctrine under state law, which has been expanded here, or the nationwide impact of plaintiffs' claims. And the court's view that the absence of a private right of action in the FDCA means the federal issues here are "insufficiently substantial" is contrary to *Grable*, in which the Supreme Court held that a private right of action is ***not*** necessary for federal question jurisdiction. *Id*. at *5.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

would have attracted a horde of original filings and removal cases raising other state claims with embedded federal issues." *Id*.

Unlike in *Merrell Dow*, the number of pharmaceutical cases that fall in the category here is "microscopic." *Grable*, 545 U.S. at 315. In *Merrell Dow*, the plaintiffs were bringing traditional state-law product liability claims and wanted to use violation of federal law as evidence of additional negligence to support those claims. Exercising subject matter jurisdiction there might have opened the door for any pharmaceutical product liability case in which a federal issue is embedded in an otherwise typical state-law claim to be removed to federal court. That is not this case.

Here, the ***only*** claims Plaintiffs can assert against the Generic Defendants are based on violations of federal law. Plaintiffs likewise base their claims against Wyeth on these violations of federal law. That distinguishes this case from virtually all other pharmaceutical product liability cases. Unlike in *Merrell Dow*, where plaintiffs could establish their state-law claims through "'alternative and independent theories—one of which is a state law theory and one of which is a federal law theory,'"[16] Plaintiffs ***must*** establish violations of federal law in order to prevail against the Generic Defendants, and to prevail on the Medication Guide claims against Wyeth. Accordingly, contrary to Plaintiffs' assertion, "[t]his action does [] fall under 'the slim category *Grable* exemplifies,'" where the state-law claims involve a "'substantial, disputed question of federal law." Mot. at 20 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006)). Further, only a very small percentage of prescription drugs on the market have a Medication Guide and could even be subject to similar claims.[17] Indeed,

---

[16] *Streed*, 2017 WL 3616591, at *3. As noted above, the *Streed* court failed to recognize that the plaintiffs had no traditional product liability claims against the Generic Defendants and therefore incorrectly viewed that case the same as *Merrell Dow*.

[17] The *Streed* court concluded that exercising jurisdiction over plaintiffs' Medication Guide claims essentially would invite all products liability claims "involving FDA-

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

outside of the two dozen or so amiodarone cases this plaintiffs' counsel has filed throughout the country, and perhaps one or two others, Defendants are unaware of any cases involving similar Medication Guide claims.[18]

Plaintiffs are the masters of their Complaint and therefore bear sole responsibility for asserting claims giving rise to federal jurisdiction. Plaintiffs were aware the Supreme Court has foreclosed claims against generic manufacturers based on the content of the warnings (or the design of a drug), and, in any event, they have no issue with the content of the warnings here. This limited Plaintiffs to attempting to bring claims based on violations of federal law. When a party purposefully and repeatedly relies on alleged violations of federal law, adjudication in a federal forum is entirely consistent with the congressionally-approved balance of federal and state judicial responsibilities. *See Lockyer*, 375 F.3d at 838-39.

### C.   This Court may exercise supplemental jurisdiction over any other claims in the Complaint that may not raise federal questions.

To the extent Plaintiffs' claims do not all depend on interpretation and application of federal statutes and regulations, this Court may still exercise supplemental

---

approved drugs into federal courts across the country." 2017 WL 3616591, at *5. Respectfully, that conclusion is wrong. Only a very small percentage of drugs have Medication Guides, and, as discussed above, the fact that ***only federally-based claims can be asserted*** against the Generic Defendants separates the claims here from virtually every other drug product liability case. Further, *Merrell Dow* was decided in 1986, long before *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001), which prohibits state-law claims seeking to enforce violations of the FDCA. Following *Buckman* and its progeny, federal courts have routinely held that plaintiffs' Medication Guide claims in nearly identical amiodarone cases are preempted. *See* note 2, *supra*. As such, the *Streed* court's concern (based on *Merrell Dow*) that exercising federal jurisdiction would attract "a horde" of cases into federal court is misplaced for this additional reason. 2017 WL 3616591, at *5 (citation omitted).

[18] As noted, one key reason for this likely is that federal courts have regularly held that Medication Guide claims are preempted under *Buckman*, which is the very reason Plaintiffs' counsel are now trying to shift these inherently federal cases into state court.

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

jurisdiction. In actions in which "the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. Section 1367 "applies with equal force to cases removed to federal court as to cases initially filed there[,]" *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 165 (1997), including cases in which original jurisdiction is based on *Grable. See, e.g.*, *Schendel v. Ace Mortg. Funding, LLC*, No. 2:11–CV-02779 JAM-JFM, 2012 U.S. Dist. LEXIS 17941, at *6-7 (E.D. Cal. Feb. 13, 2012) (citing *Grable* to find exercise of subject matter jurisdiction proper where "Plaintiff's [California Financial Code] § 50505 claim necessarily depend[ed] on resolution of substantial questions of federal law[,]" and finding it "appropriate to assert jurisdiction over [Plaintiff's] remaining state law claims"); *Broder*, 418 F.3d at 194 ("[A] single claim over which federal-question jurisdiction exists is sufficient to allow removal"). Accordingly, even if Plaintiffs could pursue traditional failure-to-warn claims against the brand-name manufacturer, Defendant Wyeth—despite the inherent contradiction in the Complaint in simultaneously alleging that the warnings in the Medication Guide were adequate—the Court may still exercise supplemental jurisdiction over those claims because at least one federal question exists that confers federal jurisdiction over the entire lawsuit.

### D.   Plaintiffs are not entitled to attorneys' fees and costs because Defendants' basis for removal is objectively reasonable.

In moving to remand this case, Plaintiffs ask the Court to award them attorneys' fees and costs under 28 U.S.C. § 1447(c), which states an "order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." But "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) *only where the removing party lacked an objectively reasonable basis for seeking removal.*" *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (emphasis added). That is not the case here.

Plaintiffs contend Defendants had no "objectively reasonable basis" for removal in light of the case law cited in their opposition, including *Streed*. Mot. at 21. But Defendants' basis for removal is not only objectively reasonable as set forth above, it is correct and, respectfully, the *Streed* court erred in remanding that case. Notably, despite remanding, the *Streed* court denied Plaintiffs' similar request for fees and costs, finding Defendants' arguments were not "objectively unreasonable." *Streed*, 2017 WL 3616591, at *6. Defendants have clarified and expanded their arguments here. Even if the Court determines remand is appropriate, that determination alone would not justify an award of attorney's fees and costs pursuant to §1447(c). "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." *Lussier v. Dollar Tree Stores, Inc.*, 518 F.3d 1062, 1065 (9th Cir. 2008). Instead, whether removal is "objectively reasonable" turns on how clear the law in question is and whether it "clearly foreclosed" arguments for removal. *See Victoriano v. Classic Residence Mgmt.*, LP, No. 14-2346, 2015 U.S. Dist. LEXIS 77886, at *16 (S.D. Cal. June 15, 2015) (citing *Lussier*, 518 F.3d at 1066-67). Defendants' arguments in favor of federal jurisdiction are not "clearly foreclosed" as detailed extensively above.

Further, the remand order in *Streed* is not dispositive or binding on this Court and does not compel an award of sanctions. *See, e.g.*, *Becerra v. McClatchy Co.*, No. 1:09-CV-00125-OWW-SMS, 2009 WL 1514472, at *4-5 (E.D. Cal. May 27, 2009) (rejecting fee request finding that "even assuming Defendants sought removal in another case and raised a similar argument in another district court, raising their argument again in this court is not *per se* unreasonable because no decision from the United States Supreme Court or the Ninth Circuit has clearly precluded Defendants' position"); *Fed. Home Loan Mortgage Corp. v. Lettenmaier*, No. CV-11-165-HZ, 2011 WL 1297960, at *1-2 (D. Or. Apr. 5, 2011) (rejecting fee request because "the decision of one district court judicial officer is not binding on another district court judicial officer.  With only a single

relevant decision issued by a member of this Court, it was not objectively unreasonable for defendants to make the argument rejected by [one judge], to another judicial officer"). Accordingly, Plaintiffs' request for attorneys' fees and costs should be denied.

## IV.   DEFENDANTS' NOTICE OF REMOVAL IS TIMELY

Plaintiffs urge this Court to remand this case to state court because Defendant McKesson was served with the complaint on September 1, 2017, and Defendants filed their Notice of Removal on October 4, 2017, more than 30 days after McKesson was served. Mot. at 8. But Plaintiffs ignore the plain language of 28 U.S.C. § 1446. Section 1446 states, "Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons … to file the notice of removal." 28 U.S.C. § 1446(b)(2)(B). Further, in cases involving multiple defendants the statute states, "If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal." *Id.* § 1446(b)(2)(C). The plain language of the statute refutes Plaintiffs' timeliness argument here. Defendant Upsher-Smith was served with the complaint on September 4, 2017, and the Notice of Removal was filed on October 4, 2017, before its 30-day period expired. Because § 1446 allows earlier-served defendants to consent to removal, McKesson properly joined in Upsher-Smith's removal, along with the other Defendants. Accordingly, Defendants' Notice of Removal is timely.

## V.   CONCLUSION

For the foregoing reasons, this Court should deny Plaintiffs' Motion to Remand and deny Plaintiffs' request for fees and costs of this Motion.

DATED:  October 31, 2017                    SHOOK, HARDY & BACON LLP


                                            By */s/ G. Gregg Webb*
                                            G. Gregg Webb

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

Attorney for Defendant
Upsher-Smith Laboratories, LLC


GREENBERG TRAURIG, LLP


By /s/ Greg Sperla
    Greg Sperla

    Attorneys for Defendants
    Sandoz Inc. and EON Labs, Inc.


GOODWIN PROCTER LLP


By /s/ April Sun
    April Sun

    Attorney for Defendants
    Teva Pharmaceuticals USA, Inc. and
    Barr Pharmaceuticals, LLC


HASSARD BONNINGTON LLP


By /s/ Thomas M. Frieder
    Thomas M. Frieder
    Joanna L. Storey

    Attorneys for Defendant
    Par Pharmaceutical, Inc.


MORRISON MAHONEY LLP


By /s/ Roberto M. Alonso Olmo
    Roberto M. Alonso Olmo

    Attorneys for Defendants
    Taro Pharmaceuticals and Zydus
    Pharmaceuticals

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)

1

2

3

DLA PIPER


By /s/ George Gigounas
   George Gigounas

4

5

Attorney for Defendant
Wyeth Pharmaceuticals, Inc.

6

7

GOODMAN NEUMAN HAMILTON, LLP

8

9

By /s/ Tom Prountzos
   Tom Prountzos

10

11

Attorney for Defendant
McKesson Corp

12

13

14

K&L GATES LLP

15

16

By /s/ Ellen L. Darling
   Ellen L. Darling
   Caitlin C. Blanche
   Andrew S. Gahan
   Daniel J. Stephenson

17

18

19

20

Attorneys for Defendants
Mayne Pharma, Inc.

21

22

23

24

25

26

27

28

27

DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
Case No. 3:17-cv-02034-LAB (MDD)